Johnson, C. J. The fate of the present application must necessarily depend upon the views of this court, relative to the constitutionality of the eleventh section of the revenue law, passed at die session of 1S45, as affecting the contract under consideration. That statute provides, “that from and after the 4th day of March, eighteen hundred and forty-five, nothing shall be received in payment of taxes, or revenue due the State, but par funds, (which is understood in this act to mean current money of the United States,) or treasury warrants of this State: provided, however, that this act shall not prevent sheriffs or collectors who have had relief by special acts, from paying into the Treasury such funds as were received from the other collectors on the 10th day of December, eighteen hundred and forty-five. I ’ By this act, the 2Sth section of the act incorporating the Bank of the State of Arkansas, passed in A. D'. 1836, was repealed, by which it was declared, “that the bills and notes of said institution, shall be received in all payments of debts due to the State of Arkansas.-” It is objected that the act of 1845, is a law impairing the obligation of contracts, and that therefore it is repugnant to the constitution of the United States and void. This brings us to the only question really involved, and that is, whether the act of 1845 so operated as to impair any obligation imposed by the contract in this case. It will be conceded that the entire debt accrued prior to the passage of the repealing act; and that the petitioner had an undoubted right to discharge it, at any time before the repeal, in bills or notes of die State Bank, we think cannot for a moment admit of a doubt. B ut did the act of 1836 so incorporate itself into the contract as to become a part of it, and to fix and vest a right in the petitioner to discharge it in the kind of funds specified in that act? If such was the legal effect and operation of it, then it is clear that the doctrine contended for is not only sound in principle but that it is conclusive upon the question; and the necessary result is, that the Legislature possessed no power to divest that right by a repeal of the act. We think that a single observation touching the consequences, which might very naturally flow from this mode of reasoning, will be fully sufficient to expose its utter fallacy. The act, by which the State Bank was created, was nothing more than a grant of power, for certain purposes therein specified, which was exclusively under tire control of the Legislature; and consequently subject to be repealed at any time, whenever in the wisdom of that body it should seem expedient for the good of the country. Suppose that, instead of merely modifying the charter, and placing the Bank in liquidation, they had conceived a total repeal better calculated to sub-serve the interests of the community. Upon the passage of the act abolishing the charter, that moment would the entire circulation of that institution have become wholly valueless; and as a necessary consequence, it would, in effect, have operated as an extinguishment of the debt. The act relied upon, by which the debtors of the State were permitted to make payment in the bills or notes of tire State Bank, was a mere gratuity, and, of course, liable to be revoked and withdrawn at any time when it should suit the purposes of the power that conferred it. If this position be correct, then it clearly results that the privilege of paying debts due the State in bills and notes of the Bank was only conferred upon the implied condition that such debts should be paid before the repeal of the law; but if delayed till after that event, in the absence of any saving in the repealing act, they could be discharged alone in the constitutional currency of the country. It has been urged in the argument, that there are circum- . stances connected with this case, which entitle it to the favorable consideration of the court; and that, in case any doubt should finally remain in relation to the law, those circumstances ought to cause the scale to preponderate in favor of the petitioner. Upon this subject we can only say that, if such facts as represented do exist, they should appeal strongly to the magnanimity and sense of justice of the Legislature, for at least partial relief, but that, sitting as a court of law and bound to act in accordance with strict technical rules, we do not feel at liberty to consider of them and give them that weight to which in strict justice they may possibly be entitled. We think therefore that the answer of the State is fully sufficient in law; and that the demurrer to it ought to be overruled. The demurrer is therefore overruled. Woodruff brought error to the Supreme Court of the United States, and the case is now pending there. Reporter.